STATE OF MINNESOTA, *ex rel.* Oscar E. Holman, *vs.* WILLIAM P. MURRAY.

June 26, 1889.

**Constitution — Act Embracing Subjects not Expressed in Title.—** Tested by section 27, art. 4, of the state constitution, which provides that "no law shall embrace more than one subject, which shall be expressed in its title," the statute by which the first Tuesday in March was fixed as the day upon which the council of the city of St. Paul should elect a corporation attorney to succeed the person elected in the year 1885 (Sp. Laws 1887, *c.* 333, § 3) is unconstitutional and void.

**Act fixing date for Election of Municipal Officers—Election on Earlier Day held Prohibited.—**The statute in force regulating such election, and designating the second Tuesday of March as the day upon which the council should elect such officer, (Sp. Laws 1885, *c.* 7, § 21, as amended by Sp. Laws 1887, *c.* 48, § 6,) construed as absolutely prohibiting an election upon a day antecedent to that specified.

**Same—Election of Corporation Attorney of St. Paul.—**A person elected upon the first Tuesday of March, 1889, to the office of corporation attorney, cannot hold the office, as against another elected upon the day named in section 21, *c.* 7, *supra,* as amended.

*Quo warranto.*

*Moses E. Clapp,* Attorney General, for the State.

*J. B. & W. H. Sanborn,* for relator.

*Henry J. Horn* and *C. D. & T. D. O'Brien,* for respondent.

COLLINS, J. This is a proceeding in the nature of *quo warranto,* instituted by the attorney general of the state under the authority conferred upon him in Gen. St. 1878, *c.* 79, § 3, against the respondent, whom he charges with having usurped and intruded into, with unlawfully holding and exercising, the office of corporation attorney for the city of St. Paul. The facts are briefly these: On the first Tuesday of the month of March, 1885, pursuant to the terms of the statute, (Sp. Laws 1885, *c.* 7, § 21,) the respondent, Murray, was duly elected to the office of corporation attorney for said city for the period of two years. He thereupon duly qualified, has ever since

and is now exercising and performing the duties of said office. On the first Tuesday of March, 1887, he was again elected to said office, and thereafter took the oath required by law, and filed a bond. At this time there was no opposition to Mr. Murray, nor was another election held that year. On the first Tuesday of March, 1889, at a regular meeting of the common council of said city, all of the aldermen (17 in number) being present, and there being two candidates for the office in question, the respondent received, *viva voce*, the votes of nine members of the council, while his opponent received the votes of but eight. The presiding officer declared at once that there was no election, that the action was premature, and that a corporation attorney could not be legally chosen until the *second* Tuesday of the month, and refused to declare the respondent elected. After some parliamentary skirmishing, a motion was made and carried, two members of the council voting "No," that the respondent be declared duly elected corporation attorney for the term of two years. The council thereafter adjourned to the second Tuesday of March, and upon that day again proceeded to vote for an attorney. The relator, Oscar E. Holman, who had not previously been a candidate, received nine votes, the respondent four, while four of the aldermen refused to vote. The relator was then declared elected. At this meeting the respondent presented a bond, having previously taken an oath of office, which the council, having first refused to accept or approve, referred to the committee on ways and means. The relator then filed an oath of office upon the third Tuesday of March, presented his bond, and the same was formally accepted and approved by the council. He has since been excluded from exercising any of the duties of the office.

The question between the parties is as to which of these elections must be declared valid, and this brings us to a statement of the legislation upon the matter. Chapter 7 of the Special Laws of 1885, before mentioned, is entitled "An act to amend the charter of the city of St. Paul, and the acts amendatory thereof," and was approved March 2, 1885. By section 21 it is provided that "the corporation attorney shall be elected by the common council of the city on the first (1st) Tuesday of March, one thousand eight hundred and eighty-

five, (1885,) and shall hold his office for the term of two (2) years thereafter." Attention must here be called to the fact that this law did not provide for an election subsequent to that held in 1885. In other words, it made no provision for the election of a successor to the person who might first be elected as corporation attorney, and whose term of office had been limited to the period of two years. This was evidently an oversight, and by an act of the legislature entitled precisely as was that of 1885, approved February 22, 1887, chapter 48, Sp. Laws 1887, § 21, *supra,* was amended (see section 6) by inserting, immediately after the figures in parenthesis, "1885," the words and figures, "and on the second (2d) Tuesday of March every two years thereafter." It will now be observed that by this amendment all elections subsequent to the first were fixed for the second instead of the first Tuesday of the month. By the third section of an act approved a few days later, on March 1st, (Sp. Laws 1887, *c.* 333,) the word "second," in section 6 of the amendment of February 22d, was stricken out, and the word "first" inserted in lieu thereof; the manifest purpose of the change being to designate the first Tuesday of March as the day upon which an attorney should be elected instead of the second.

The election in 1887, under which the respondent qualified and served for two years, was held under the amendment of March 1st; and the proceedings of the council upon the first Tuesday of March, 1889, were also under the same statute, which is now admitted by all to be repugnant to a section of our state constitution, and therefore void. The act of the legislature in which the amendment is found (chapter 333, *supra*) is entitled "An act to provide additional compensation to the auditor and assessor of Ramsey county, for clerk-hire during the years one thousand eight hundred and eighty-seven (1887) and one thousand eight hundred and eighty-eight, (1888,) in transcribing the books of their respective offices, rendered necessary by reason of the extension of the city limits, and for other purposes," and is in direct violation of that inhibition found in the state constitution (article 4, § 27) which directs that "no law shall embrace more than one subject, which shall be expressed in its title." It provided for and embraced four subjects—*First,* in the first and

second sections, additional compensation for the auditor and assessor of the county, the only subject mentioned in its title; *second*, in the third section, the amendment now being considered; *third*, in the fourth section, the salary of the city jailer; and, *fourth*, in the fifth section, the salary of the market-master of the city.   Beneath and covered by a title which relates solely to extra compensation for two of the officers of Ramsey county, is found, in addition to that which might be expected, *first*, a change in the time for the election of an officer of the city of St. Paul; and, *secondly*, the salaries fixed for two other officers of the same municipality. It would be difficult to invent a law more obnoxious to the constitutional restriction above quoted; for one of the subjects—that indicated by the title—is absolutely foreign to each of the other subjects, and as independent of them as if it had appeared in a separate act.   See *State* v. *Kinsella*, 14 Minn. 395, (524.)   Being obliged, therefore, to put aside the amendment of March 1, 1887, the respondent is met with the fact that he was not elected upon the day designated by the act approved February 22, 1887, but one week earlier, upon the first, instead of upon the second, Tuesday of the month of March, and consequently *prior* to the day upon which came the duty to elect.   He is also confronted by the further fact that upon the day fixed by the statute for the performance of the duty in question the city council formally elected another person, the relator in this proceeding, to the office.

In *State* v. *Smith*, 22 Minn. 218, this court passed upon a section of a city charter, by which the council was required to elect an assessor at the first meeting held after the annual city election, fixed by law for the first Tuesday in April.   The city election was held upon April 7th, and the first meeting of the council was upon the 14th.   At this meeting no action was taken upon the question of electing an assessor to succeed the relator, whose term of office expired the next day.   At the next regular meeting, on the 21st, an unsuccessful effort was made to elect, and an adjournment had to the 25th.   No quorum being present on the 25th, further adjournment was had to the 29th, when the respondent was elected.   The question involved being the right of the respondent to exercise the duties of the

office, the late Justice Cornell, speaking for the court, after assuming that an assessor should have been elected on the 14th, said: "The failure of the council then to act upon the matter, and its adjournment *sine die*, did not relieve it from the duty, which the law imposed upon it, of making an election. So far as relates to the time when such election should be made, the statute is simply directory. Having neglected its duty at the proper time, from whatever cause, the obligation still rested upon it to elect at the earliest opportunity."

No one would question the general rule, as outlined in the foregoing extract, that when a day is specified upon which a public officer is to perform an official act regarding the rights and duties of others, the requirement will be considered merely directory, unless the nature of the act, or the words used in the statute, show that the designation of the day was intended as a limitation upon or restriction of the power of the officer. The statute under discussion in this case being simply directory, it is claimed by the respondent that, under this rule, when the act is performed upon a wrong day, it makes no difference, in principle or in practice, whether such performance is upon a day antecedent or subsequent to that designated by the law; or, to present it in another form, the claim is that whenever the statute grants the power or imposes the duty upon a large or small body of electors to proceed upon a fixed and certain day to the election of a public officer, and the right and duty is exercised and discharged upon the day and in the manner prescribed, the person so elected can be deprived of his office by another person who has at some previous time, without regard to the statutory direction, received a majority of the votes of this same body of electors. And it is upon this proposition that the respondent is finally compelled to rest his claim to the office in dispute.

None of the cases cited by counsel in support of their argument sustain the position assumed. *Leech* v. *State*, 78 Ind. 570, and *Whitney* v. *Van Buskirk*, 40 N. J. Law, 463, are to the effect that an election may be held to fill a vacancy caused by resignation to take effect on a future day, before there is an actual vacancy. *People* v. *Keeling*, 4 Col. 129, is a case from which it appears that by legislative enactment the day upon which a certain municipality

was authorized to hold its annual charter election was changed from the first Monday to the first Tuesday of April. In ignorance of the change, an election was held upon the first Monday, at which officers were elected, who thereafter qualified, and, at the time they were cited into court to show cause why a writ of *quo warranto* should not issue to test their right to the offices, were discharging their official duties without objection or opposition. The court said that the election had not been properly held, but discharged the order, because a removal of the acting officers would deprive the municipality of all government until after the next charter election. The court in rendering its opinion seems also to have been influenced by the fact that no one objected to the election on the day it was held, and that it appeared that the election substantially expressed the will of those interested. The effect of this case is against the respondent, for the court expressly determined the election actually held to be void. As we fail to see the relevancy of the other cases cited in his behalf, they will not be reviewed.

The counsel for each of these parties have called attention to *Lynch* v. *Lafland,* 4 Cold. 96, and it has some pertinency. An ordinance required a city council to elect a city physician as soon after its organization as convenient, who should hold his office for the term of one year. Immediately after the council organized, in June, 1865, it elected such physician. By mistake and oversight no charter election was held in June, 1866, as it should have been, but an election was had in the month of October of that year. The council, made up in whole or in part of aldermen then elected, organized at once, and chose a city physician, whose claim to the office was resisted by another person elected in June previous by the old council, and who insisted that his term of office did not expire until June, 1867. The court awarded the office to the person elected in October, holding the election in June preceding to have been to fill a vacancy only. The bearing of this decision is in favor of the relator.

In many of the cases cited by counsel for the contestant here, the time for an election had been fixed by the constitutions of the states in which the litigation has arisen, and for that reason they are not applicable. Of this class may be noted *People* v. *Schiellein,* 95 N.

Y. 124, and *State* v. *Collins,* 2 Nev. 351. It is obvious that a con-stitutional provision, fixing the time for electing officers therein cre-ated, as at the general election in a certain year, cannot be disre-garded, and such officers chosen at some other time, either before or after the general election specified. Another class of cases are those in which the dispute has been over the length of the official term, or whether the day of election had been changed by law. These are the cases of *Showalter* v. *Cox,* 26 Kan. 120; *People* v. *Witherell,* 14 Mich. 48, and *De Armond* v. *State,* 40 Ind. 469.

In the case at bar it stands admitted that the relator was elected, if at all, upon the day expressly set apart for that purpose, and by a board exclusively authorized by law to elect, and that the term of of-fice of the respondent under the election of 1887 had fully expired. In these respects, and in the further important fact that we have the respondent's claim to the office vigorously contested by one who af-firms that the place is his by right, this case is easily distinguished from several of the cases heretofore mentioned. It is not a proceed-ing wherein to grant the relief demanded leads to the suspension of municipal government for a long period of time, as would have been the inevitable result, specially referred to, in *People* v. *Keeling, supra,* and in *State* v. *Tolan,* 33 N. J. Law, 195; and in which, by reason of the public interests which would thereby suffer seriously, the court ought to and did exercise its discretion, by refusing to disturb the acting officers.

Nor is there anything in the suggestion that because under the rules the regular meetings of the city council are fixed for the first and third Tuesdays of each month, and no regular meeting is appointed for the second Tuesday, the statute, which imposes upon the council a public duty upon the day last mentioned, can be so far ignored as to allow or authorize the performance of this duty upon some earlier day. The rule itself must be made to yield, and not the statute. To allow a duty of this character to be performed in advance of the day named, and consequently without limit as to time, would be to confer upon an elective board or body, possessing the disposition so to do, the right to anticipate vacancies and fill offices under its control, at pleasure, weeks, or perhaps months, before the proper time. It would lead to

the appointment and election of officers by men composing one board or body, which, for obvious reasons, the statute designed should be selected by their successors in office. Such a rule of law cannot be adopted with safety to public or private rights, and the statute in question, by which the time for electing a corporation attorney was fixed for the second Tuesday of March, must be construed as absolutely prohibiting an election upon any anterior day. In addition to the grounds heretofore stated for such a conclusion, an additional and complete one may be found in the reasoning of all the decisions in which statutes of the kind herein involved have been held directory merely, and not mandatory, to the extent of permitting and authorizing an election or appointment at a later day than that named in the law. This reasoning and argument is clearly stated and made prominent in *State* v. *Smith, supra.* Such a statute is declared directory solely because, the body whose duty it is to elect upon a day certain having neglected to perform the duty, from some cause wholly immaterial, the obligation still remains, and must be fulfilled at the earliest opportunity. It is apparent from this reasoning that the occasion for holding a law directory in its terms cannot arise in any case until there has been an omission or neglect from some cause to obey its provisions,—until there has been a default of duty, with a continuing obligation to perform.

As the statute (Gen. St. 1878, *c.* 79, §§ 5-7, 9,) authorizes judgment in this proceeding upon the rights of the relator as well as those of the respondent, it is ordered that judgment be entered ousting and excluding said respondent Murray, from the office of corporation attorney for the city of St. Paul, and that he forthwith surrender and deliver up to the relator, Holman, possession of said office, with all the books and papers relating thereto.